The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: November 12 2024

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 23-31763 |
| | ) | |
| Damian T Morgan | ) | Chapter 13 |
| | ) | |
| and | ) | |
| | ) | **JUDGE JOHN P. GUSTAFSON** |
| Rae E Morgan | | |

**Debtors.**

### ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

This cause comes before the court after Hearing on Confirmation of Debtors' Chapter 13 Plan. Also pending is the Trustee's Motion to Dismiss for Lack of Ability to Propose a Confirmable Plan. This decision will address only the question of whether or not the Debtors' Chapter 13 Plan can be confirmed. [Docs. ##84 & 85]. For the reasons set forth below, the court finds that confirmation must be denied based upon the failure of the Debtors to commit all projected disposable income to the Plan.

### FACTS

The matter to be decided appears to be a purely legal issue. The Debtors filed Official Form 122C-1, the first part of the "Means Test", showing they had current monthly income of $12,137.58. [Doc. #17, p. 3, Q. 20a]. This results in current monthly income for the year of $145,650.96. [*Id.*, Q. 20b]. The Debtors' family size is 3. [*Id.*, Q. 16b]. At the time the case was

filed, the annual median income for a family size of 3 in Ohio was $90,912. [*Id*., Q. 16c]. Accordingly, Debtors are "over the median" and are required to propose a Chapter 13 Plan that is 60 months in length, or pays unsecured creditors 100%. *See*, *Baud v. Carroll*, 634 F.3d 327, 351 (6th Cir. 2011)("Section 1325(b)(4) expressly states that the applicable commitment period shall be three years, unless the debtor's current monthly income is above the applicable state median, in which case it shall be not less than five years. *See* 11 U.S.C. § 1325(b)(4)(A). Confirmation of a plan of less than three or five years in length, respectively, is permissible 'only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.' 11 U.S.C. § 1325(b)(4)(B)."); *see also*, *In re Flores*, 735 F.3d 855 (9th Cir. 2013).

As "over the median" Debtors, the amount that must be paid into the Chapter 13 Plan is determined by the Means Test. *See*, *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 64, 131 S.Ct. 716, 721, 178 L.Ed.2d 603 (2011)("To determine how much income the debtor is capable of paying, Chapter 13 uses a statutory formula known as the 'means test.' §§ 707(b)(2) (2006 ed. and Supp. III), 1325(b)(3)(A) (2006 ed.)").

Here, Debtors' Form 122C-2, the second part of the Means Test captioned "Chapter 13 Calculation Of Your Disposable Income", reflected a deduction of $2,293.03 for "all qualified retirement deductions". [Doc. #18, p. 7, Q. 41]. This deduction can include both contributions made by Debtors to qualified retirement plans, and "all required repayments of loans from retirement plans". *See*, Official Form 122C-2, Q. 41.

The Chapter 13 Trustee requested payoff dates for the 401(k) loan payment(s). *See e.g.*, [Doc. #52 "Confirmation Hearing continued to March 14, 2024 at 9:30 a.m. for Trustee to receive 401(k) payoff information."].

After providing the payoff dates, Debtors counsel argued that there was no requirement for the Debtors to increase the total amount to be paid into the Chapter 13 Plan based on the 401(k) loans being paid off. Instead, it appears that counsel is arguing that because the monies "required to repay such loan shall not constitute 'disposable income' under section 1325" [*see*, §1322(f)] that the funds that become available after repayment of the loan(s) are not "projected disposable income" under 1325(b)(1)(B).

The parties agree that the Debtor has certain 401(k) loan(s) that will be paid off during the life of the Chapter 13 Plan. The Trustee contends that the Means Test determines only the initial

2

payment to be made under the Plan, not the amount to be paid for the life of the Plan when – as here – there are 401(k) loans that are being paid off during the life of the Plan.

By the Trustee's calculation, the payoff of the three 401(k) loans should result in stepped up payments that would result in creditors receiving just under $50,000 in additional funds, over that required by Line 45 of the Means Test with the loan deductions. The court does not adopt the Trustee's assertion as a finding of fact, but instead addresses the legal framework for determining whether or not stepped up Chapter 13 payments are required as the 401(k) loans are paid off. If there are factual issues regarding the amounts of the loan payments, or the timing of the loan payoffs, those can be addressed at an evidentiary hearing.

In response, the Debtors asserted that they would pay out what was required by Line 45 of the Means Test. While Line 45 included a deduction for the 401(k) loan payments, the Debtors proposed to pay the amount on Line 45, times 60 months, and would do so by stepping up the payments as the 401(k) loan payments were paid off. So, the amount would not be Line 45, times 60 months, plus additional monies on top of the Means Test number – it would instead be the original Means Test amount, but starting with a lower monthly payment that would increase as the 401(k) loans were paid off.

It appears that the parties agree that the proper "Line 45" number on the Means Test should be $1,314.43 per month, times 60 months, or $78,865.80 just based on disposable income at the time of filing. *See*, Debtors' Reply To Trustee's Motion To Dismiss Case For Lack Of Ability To Propose A Confirmable Plan [Doc. #83, p. 1]. In addition, it is the Trustee's position that the amounts going to the 401(k) loans (and deducted in arriving at the $1,314.43 number) must be added to that amount, for an additional $49,666 that needs to part of the confirmed Chapter 13 Plan in order to meet the requirements of Section 1325. The Chapter 13 Trustee asserts that the total amount that is required to be paid to unsecured creditors is $128,531.80 over the life of the Plan.

The Debtors' position is that the amount on Line 45, times 60 months, is what is required, with no additional monies being added from 401(k) loan payoffs. Instead, the Debtors ask the court to confirm a Plan that would pay the $78,865.80 over sixty months, but the monthly payments at the start of the Plan would not initially be sufficient to amortize that amount, but with the

increases in the monthly payments as the 401(k) loans are paid off, the Plan would result in the $78,865.80 being paid to unsecured creditors by the 60th month – and no more.[1]

## LAW AND ANALYSIS

"In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. §§ 1325(b)(1)(B) and (b)(4) .... For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as 'amounts reasonably necessary to be expended.' The test supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65, 131 S.Ct. 716, 721-22, 178 L.Ed.2d 603 (2011); *see also*, *Baud v. Carroll*, 634 F.3d 327, 333 (6th Cir. 2011)("For debtors with current monthly income exceeding the applicable median family income, however, §1325(b)(3) requires courts to determine the amounts reasonably necessary to be expended in accordance with the "means test," *i.e.*, the statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases.").

Under 11 U.S.C. Section 1325(b)(1)(B), because the trustee has objected and the Debtors' Chapter 13 Plan does not propose to pay all creditors in full, the court may not confirm the Plan unless, as of the effective date of the Plan, the Plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period is applied to make payments to unsecured creditors.

The Bankruptcy Code does not define the term "projected disposable income." *Hamilton v. Lanning*, 560 U.S. 505, 509, 130 S.Ct. 2464, 2469, 177 L. Ed. 2d 23 (2010); *Penfound v. Ruskin (In re Penfound)*, 7 F.4th 527, 530 (6th Cir. 2021). "But the Supreme Court has held that it is simply the debtor's disposable income, under § 1325(b)(2), adjusted for any 'changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.'" *Davis v. Helbling (In re Davis)*, 960 F.3d 346, 350 (6th Cir. 2020)(quoting *Lanning*, 560 U.S. at 524, 130 S.Ct. 2464).

---

[1]/ The actual Chapter 13 Plan terms are not quite as simple as the court's explanation of the parties' positions. The Debtors' First Amended Plan proposes to pay $472 per month for 8 months, $2,632 for 1 month, $712 per month for 16 months, $1,205 per month for 3 months, $2,107 per month for 11 months, and then $2,511 per month for 21 months. [Doc. 76, p. 2]. By the court's calculation, this would result in payments to the Trustee of $97,323, but there are other separate issues which were apparently being discussed by Debtors' counsel and the Trustee regarding the proper amount that should be reflected on Line 45 of the Means Test. This decision is limited to the 401(k) payoff issue.

*Davis* continued: "Determining a debtor's "projected disposable income" under §1325(b)(1) is therefore a two-step process. *See* [*Lanning*] at 519, 524, 130 S.Ct. 2464. First, the debtor's current "disposable income" is determined by the formula prescribed in § 1325(b)(2). *Id*. at 519, 130 S.Ct. 2464. Second, in certain circumstances, that sum is adjusted for changes "known or virtually certain" to occur during the commitment period." *Id.*

This holding fits in with the Sixth Circuit's earlier decision in *Darrohn*, which held that while the *Lanning* decision focused on the income side of the projected disposable income formulation, the holding clearly applied to 'changes in debtor's income *or expenses* . . . ." *Darrohn*, 615 F.3d at 477 (emphasis in *Darrohn*). In determining whether a deduction for a Means Test expense was permitted, the *Darrohn* court stated: "Because it is undisputed that the Darrohns intended to surrender these properties, this represents a change in the Darrohns' "expenses that [was] known or virtually certain at the time of confirmation." *Id*. The bankruptcy court therefore should have accounted for this changed circumstance, and its failure to do so violated the requirements of Section 1325. *See id*. at 2474." *Id*.

More directly to the point here, in the Sixth Circuit's *Seafort* decision, the issue was whether the debtors could confirm a Chapter 13 Plans that proposed to fund new retirement contributions "post-petition after the[ir] 401(k) loans were paid in full." *Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 664 (6th Cir. 2012). Essentially the debtors in *Seafort* wanted to confirm Chapter 13 Plans that would apply monies made available after 401(k) loans were paid off to fund new retirement contributions.

The *Seafort* court held: "[T]he bankruptcy code does not countenance such a debtor-friendly result. Instead, "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income' that must be turned over to the trustee for distribution to unsecured creditors." *Id*. at 663. Thus, the *Seafort* decision did not just prohibit the use of amounts paid on a 401(k) loan to "begin, resume, or otherwise increase the amount of such contributions post-filing in an attempt to reduce payments to unsecured creditors." *Penfound*, at 532. *Seafort* also held that the post-petition income that was freed up by repayment of the loans was "projected disposable income" that had to be paid to unsecured creditors under §1325(b)(1)(B).

Shortly after *Seafort* was decided, this same question, regarding the necessity of a 401(k) step up, was presented for decision by Judge Morgenstern-Clarren in the case of *In re Scott*, 2013

WL 5567319, 2013 Bankr. LEXIS 4266 (Bankr. N.D. Ohio Oct. 9, 2013). Judge Morgenstern-Clarren rejected debtors' argument that an increase was not required:

> The trustee argues further that the calculation of the debtors' projected disposable income should also include the extra income that will be available once the debtor David Scott's 401(k) loans are repaid, which result is fully-supported by the Sixth Circuit decision *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012). As the Circuit stated in that opinion, "the income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' . . . Chapter 13 plan[] for distribution to the unsecured creditors[.]" *Id*. at 674. The trustee's objection on this point is also sustained.

*Scott*, 2013 WL 5567319 at *2, 2013 Bankr. LEXIS 4266 at *7 (footnotes omitted).

Under the *Seafort* holding, in an over-the-median Chapter 13 case Plan with a "Means Test"-based monthly payment proposing less than 100% to unsecured creditors, when 401(k) loans are paid off, the monies that become available because of the loan payoffs have to be pledged to unsecured creditors, or the Plan cannot be confirmed over a trustee or creditor's objection. §1325(b)(1)(B).

The statutory exclusion of retirement loan repayments from "disposable income" under §1325 is limited to "any amounts required to repay such loan". *See*, §1322(f). Simply put, *Seafort* holds that when the retirement loan is repaid, the exclusion ends. While courts in other circuits may view contributions to a retirement account as being excludable from disposable income on some other basis – those holdings are contrary to the Sixth Circuit's holding in *Seafort*. Because *Seafort* is a published Circuit Court decision, this court is required to follow it.[2]

Moreover, it is important to note that the Debtors here do not propose to use the funds from the loan payoff for a different expense that qualifies for a Means Test expense deduction – they appear to simply argue it is not "projected disposable income" and therefore they are permitted to retain those monies. That is contrary to the binding statutory interpretation found in *Seafort* that those monies are part of "projected disposable income." *See*, *Seafort*, 669 F.3d at 663.

For all of the above reasons, **IT IS ORDERED THAT** Confirmation of Debtors' Chapter 13 Plan is Denied, without prejudice and with leave to file a third amended plan.

---

[2]/ Notably, two subsequent Sixth Circuit decisions dealing with retirement contributions specifically emphasize that the determinations made that were essential to the decision in *Seafort*, must be followed. *See*, *Davis*, 960 F.3d at 353 (*Davis* court was bound by a prior panel's statutory interpretation where it was essential to the decision); *Penfound*, 7 F.4th at 533 (*Penfound* court was bound by statutory interpretations made in both *Seafort* and *Davis* to the extent they were "essential to the decision".).